# COURT OF APPEALS OF VIRGINIA

## Record No. 2031-24-4

CI'YANTE ARCOREY ATAVIUS WINGATE

v.

COMMONWEALTH OF VIRGINIA

## Record No. 1347-25-4

CI'YANTE ARCOREY WINGATE, S/K/A
CI'YANTE ARCOREY ATAVIUS WINGATE

v.

COMMONWEALTH OF VIRGINIA

Present: Judges Friedman, Chaney and Duffan

Argued at Fredericksburg, Virginia

Opinion Issued July 14, 2026

**FROM THE CIRCUIT COURT OF FAIRFAX COUNTY**
Stephen C. Shannon, Judge

Kathryn Donoghue, Senior Assistant Public Defender (Fairfax County Public Defender's Office, on briefs), for appellant.

Robert D. Bauer, Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

**PUBLISHED OPINION BY
<u>JUDGE KEVIN M. DUFFAN</u>**

The right to a speedy trial is guaranteed not only by the Sixth Amendment of the United

States Constitution and Article I, Section 8 of the Constitution of Virginia, but is also codified in

Virginia law under Code § 19.2-243 and acts as a safeguard against oppressive acts by the

---

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

government in prosecuting crimes.[2]  It is incumbent upon the Commonwealth to calculate, with precision, the time by which a prosecution must commence.  These time limitations are unforgiving, and the severity of the crime to be prosecuted is immaterial to the analysis.

In this case, a Fairfax County jury convicted Ci'yante Arcorey Atavious Wingate of unlawful wounding for shooting a young man in the face during a drug deal.  The circuit court sentenced Wingate to five years of active incarceration.  On appeal, Wingate assigns error to the circuit court's denial of his "Motion to Dismiss for Failure to Comply with Speedy Trial Requirements" under Code § 19.2-243.  Finding that Wingate's trial did not commence within five months of the juvenile and domestic relations district court's determination of probable cause—even when applying all tolling provisions as outlined by the Code—we reverse the circuit court's denial of Wingate's "Motion to Dismiss for Failure to Comply with Speedy Trial Requirements."[3]

BACKGROUND[4]

In 2023, Wingate, then 16-years-old, shot Mathias Marty in the face during a drug deal. He was arrested three days later and charged with aggravated malicious wounding, robbery by

---

[2] *See* U.S. Const. amend. VI; Va. Const. art. I § 8.  Wingate does not argue a constitutional violation of his speedy-trial rights, but a statutory violation.  "[T]he statutory right to a speedy trial and the constitutional right to a speedy trial are separate, though related, rights that utilize different frameworks and focus on different elements."  *Osman v. Commonwealth*, 76 Va. App. 613, 656 (2023) (quoting *Brown v. Commonwealth*, 75 Va. App. 388, 406 (2022)).

[3] The court also denied Wingate's subsequent "Motion to Reconsider the Court's Denial of the Motion to Dismiss Based on a Violation of Mr. Wingate's Right to a Speedy Trial Under Virginia Code § 19.2-243."

[4] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court."  *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

use of a firearm, and use of a firearm in the commission of a robbery. The Fairfax County Juvenile and Domestic Relations District Court (JDR) certified the charges to the grand jury at its preliminary hearing on April 12, 2023. Wingate remained in custody from this April 12th date.

On April 20, 2023, the parties agreed to a jury trial on July 17, 2023. On July 14, 2023, Wingate moved to continue the trial to September 12, 2023. This continuance order was entered by agreement by the parties. The order granting the motion stated that Wingate agreed to a "speedy trial waiver for [the] period of this continuance." Prior to the arrival of the agreed upon trial date, on August 30, 2023, the Commonwealth filed its own motion to continue. A hearing on the motion was held on September 8, 2023. At the hearing, the Commonwealth informed the circuit court that it had submitted items to the Department of Forensic Science (DFS) for DNA analysis on April 14, 2023, but as of the date of the hearing, there was still no analyst assigned to the case, and the items had not been tested. The discussion then turned to speedy trial and the Commonwealth explained to the court that "[it] [was] in a position where [it] need[ed] to concede to a bond and ask the [c]ourt to allow []Wingate out[.]" Wingate informed the court that he would not object to the Commonwealth's continuance as long as he was released on bond.

The court determined that it would first deal with the Commonwealth's continuance request and then it would consider Wingate's motion for bond. To clarify the position of each party, the circuit court reiterated that the Commonwealth was requesting a continuance regardless of whether Wingate was granted bond and that Wingate was objecting to a continuance if he was not placed on bond. Both parties confirmed that these were their positions. The circuit court granted the Commonwealth's motion to continue the trial to November 13,

2023 over Wingate's objection. Subsequently, the court set the bond motion for September 15, 2023.[5]

At the September 15, 2023 bond hearing, in discussing the Commonwealth's choice to proceed with DNA testing, Wingate's counsel stated:

> We would submit that once the Commonwealth has dictated that this is the path they want to go, then my client does have certain rights that need to be preserved and if the Commonwealth is unable to be ready within a reasonable amount of time that they have said, "[t]his is the evidence that we want to proceed with," they should have been able to do that, and the fact that that runs afoul of speedy trial, my client should be entitled to be released.

In response, the Commonwealth indicated that it was not opposing Wingate's release because it wished to do additional forensic testing. Despite the Commonwealth's agreement with Wingate's request for release, the circuit court denied Wingate's bond motion, finding that "there [were not] any conditions of release that [would] protect the community and protect this victim." Consequently, Wingate remained in custody.

On November 9, 2023, Wingate filed a "Motion to Dismiss for Failure to Comply with Speedy Trial Requirements." The court heard argument on the motion on the first day of trial, November 13, 2023, before it arraigned Wingate and began voir dire.[6] Wingate argued, by his calculation, 158 days should be attributed to the Commonwealth. Wingate acknowledged that he initially was granted a continuance on July 14th, setting the trial for September 12th, but he also stated to the court that at the September 8th hearing on the Commonwealth's motion to continue, he made it "very clear on the record that he was objecting to [the Commonwealth's] continuance." Wingate further argued that the time period between July 14th and July 17th

---

[5] The September 8th Commonwealth continuance motion and the September 15th bond hearing motion were heard before Judge Randy I. Bellows.

[6] Judge Stephen C. Shannon presided over the jury trial.

- 4 -

should count against the Commonwealth because, although he filed his motion to continue on July 14th, the trial was not scheduled until July 17th. In summary, Wingate argued that there was a dispute over the periods between July 14th and July 17th, and between September 8th and September 12th.

The Commonwealth responded that tolling began on July 14th, when Wingate's motion for a continuance was granted and further argued that the speedy trial period recommenced on September 15th—not September 8th—because the circuit court denied Wingate bail on September 15th. Lastly, the Commonwealth argued that the forensics delay fell within one of the enumerated exceptions to a defendant's speedy trial rights, under Code § 19.2-243. The circuit court took the matter under advisement, arraigned Wingate, and began the trial.

Wingate renewed his motion to dismiss at the end of the Commonwealth's case. The circuit court continued to take the matter under advisement. Wingate did not present evidence, and after the circuit court heard argument on the speedy trial issue, his motion to strike was denied, but the circuit court kept the speedy trial objection under advisement. At the close of the evidence, the circuit court instructed the jury.

During jury deliberations, the circuit court denied Wingate's speedy trial motion. It found that the "delineated exceptions that toll the running of speedy trial under [Code §] 19.2-243 are not exhaustive" and that "[i]f the reason for a delay is of a like kind in nature as a listed exception, the speedy trial clock is tolled." The circuit court focused on the Commonwealth's September 8th continuance, which it found was "due to a circumstance beyond the control of the trial judge and the parties, namely [DFS] had not conducted tests on certain items." The circuit court found that the Commonwealth's request for forensic testing was "timely," that the September continuance was to "ensure a fair trial to both the accused and the Commonwealth," and that the results of DFS evidence testing could have been "inculpatory or

exculpatory." The circuit court found that the speedy trial period was tolled "[f]rom September 8th through the trial date," November 13th, and that the trial "occurred within the statutory limits for speedy trial."

The jury convicted Wingate of the lesser-included offense of unlawful wounding and use of a firearm in the commission of a maiming; it acquitted him of robbery. The court later set aside the firearm conviction. The court ultimately sentenced Wingate to five years' incarceration.

Wingate's appellate counsel subsequently filed a "Motion to Reconsider the Court's Denial of the Motion to Dismiss Based on a Violation of Mr. Wingate's Right to a Speedy Trial Under Virginia Code § 19.2-243." At a hearing on the motion, Wingate argued that the 66 days from September 8th to November 13th were incorrectly calculated. He challenged the circuit court's analysis of an implied exception for DFS testing in this case as similar to the ones enumerated in the statute. He concluded that the Commonwealth failed to meet its burden to "demonstrate that the delay, the 66 days between September 8th and November 13th, where [it] requested a continuance to allow DFS to conduct testing that had not been completed or performed, was excusable." The circuit court denied the motion. Wingate appeals.

ANALYSIS

I. Standard of Review

"[A] statutory speedy trial challenge presents a mixed question of law and fact." *Ali v. Commonwealth*, 75 Va. App. 16, 29 (2022) (alteration in original) (quoting *Young v. Commonwealth*, 297 Va. 443, 450 (2019)). "The appellate court gives deference to the trial court's factual findings but reviews legal issues *de novo*[.]" *Id.* (quoting *Young*, 297 Va. at 450). We will not disturb a circuit court's factual findings unless they are "plainly wrong" or "without evidence to support them." *Id.* at 33 (quoting *Wilkins v. Commonwealth*, 292 Va. 2, 7 (2016)).

## II. General Overview of Statutory Speedy Trial Rights

A defendant's constitutional right to a speedy trial "has been supplemented by Code §§ 19.2-241 and 19.2-243, held to be a legislative interpretation of what constitutes a speedy trial." *Young*, 297 Va. at 450 (quoting *Stephens v. Commonwealth*, 225 Va. 224, 229-30 (1983)). "Code § 19.2-243 provides specific time limits 'within which an accused must be tried, absent tolling or other statutory exceptions.'" *Osman v. Commonwealth*, 76 Va. App. 613, 657 (2023) (quoting *Brown v. Commonwealth*, 75 Va. App. 388, 406 (2022)).

If "the accused [is] held continuously in custody . . . [he] shall be forever discharged from prosecution for such offense if no trial is commenced in the circuit court within five months from the date such probable cause was found by the district court." Code § 19.2-243. This Court has recognized that the five-month requirement equates to "152 and a fraction days." *Osman*, 76 Va. App. at 657 (quoting *Ballance v. Commonwealth*, 21 Va. App. 1, 6 (1995)). The "five-month period begins to run on the day after the preliminary hearing at which cause was found." *Wallace v. Commonwealth*, 65 Va. App. 80, 89 (2015) (quoting *Robinson v. Commonwealth*, 28 Va. App. 148, 152 (1998)). "Generally, the time between the preliminary hearing and initial trial date 'counts against the Commonwealth for speedy trial purposes.'" *Osman*, 76 Va. App. at 658 (quoting *Palmer v. Commonwealth*, No. 0885-21-1, slip op. at 11 (Va. Ct. App. Aug. 9, 2022)).

"[T]he spirit and purpose of the law [is] to 'provide for speedy trial exceptions in circumstances "beyond the control of the trial judge and the parties," when delays are warranted to "ensure a fair trial to both the accused and the Commonwealth."'" *McCalla v. Commonwealth*, 87 Va. App. 564, 576 (2026) (quoting *Wallace*, 65 Va. App. at 94). Accordingly, the speedy trial time frame is "not absolute" and can be tolled in several enumerated circumstances. *Young*, 297 Va. at 451. Speedy trial limitations do not apply if a delay is caused:

1. By evaluations or restoration related to his competency or insanity pursuant to Chapter 11 (§ 19.2-167 et seq.) or by reason of his confinement in a hospital for care and observation;

2. By the witnesses for the Commonwealth being enticed or kept away, or prevented from attending by sickness or accident;

3. By the granting of a separate trial at the request of a person indicted jointly with others for a felony;

4. By continuance granted on the motion of the accused or his counsel, or by concurrence of the accused or his counsel in such a motion by the attorney for the Commonwealth, or by the failure of the accused or his counsel to make a timely objection to such a motion by the attorney for the Commonwealth, or by reason of his escaping from jail or failing to appear according to his recognizance;

5. By continuance ordered pursuant to subsection I or J of § 18.2-472.1 or subsection C or D of § 19.2-187.1;

6. By the inability of the jury to agree in their verdict; or

7. By a natural disaster, civil disorder, or act of God.

Code § 19.2-243.

### III.  Wingate's Speedy Trial Calculation

Wingate was continuously held in custody starting on April 12th, when his charges were certified by JDR.  This is the first day of his speedy trial clock.  Code § 19.2-243; *Wallace*, 65 Va. App. at 89 ("[t]he 'five-month period begins to run on the day after the preliminary hearing at which cause was found'" (quoting *Robinson*, 28 Va. App. at 152)).

At an April 20, 2023 proceeding, the parties agreed to a trial date beginning on July 17th. However, on July 14th, Wingate requested a continuance, which the trial court granted by order with Wingate agreeing to waive his speedy trial rights "for the period of this continuance."  The speedy trial time chargeable to the Commonwealth from April 13th (the day after the preliminary hearing) to July 14th (Wingate's continuance) was 92 days.  Wingate's continuance order set the new trial date for September 12th.  But for any intervening circumstance, this period would have

been tolled for purposes of speedy trial calculation because "[a] continuance granted on the motion of the accused" does not count against the Commonwealth. Code § 19.2-243(4).

### IV. Wingate Objected to the Intervening Continuance

Wingate argues on appeal that the days from September 8th through November 13th are chargeable to the Commonwealth, putting the Commonwealth in excess of his speedy trial window. On September 8th, the Commonwealth requested to continue the upcoming September 12th trial date. The court granted the continuance and then set trial for November 13th.

Three questions regarding the statutory speedy trial period arise because of the September 8th hearing. Is it legally significant that Wingate's objection to the September 8th continuance was initially conditioned upon his release from custody? Did the tolling period that began on July 14th end on September 8th, when the court granted the Commonwealth's motion to continue over Wingate's objection? Is it legally significant that Wingate initially agreed to a September 12th trial, meaning that the period between July 14th through then would *always* count against him, despite the Commonwealth's continuance on September 8th? We address each question in turn.

The five-month period in which the Commonwealth must try a criminal defendant is "not absolute," as there are several enumerated exceptions under the law. *Young*, 297 Va. at 451. For example, "[a] continuance granted on the motion of the accused" does not count against the Commonwealth. Code § 19.2-243(4). However, a continuance objected to by the defendant is chargeable to the Commonwealth for speedy trial purposes. *Heath v. Commonwealth*, 32 Va. App. 176, 186 (2000) (Benton, J., dissenting) ("[A]bsent defendant's request for a continuance or concurrence in the Commonwealth's request . . . [t]he Commonwealth has the duty, absent an exception set forth in the statute, to provide the accused a speedy trial." (quoting *Baker v. Commonwealth*, 25 Va. App. 19, 25 (1997))).

The Virginia Supreme Court elaborated on this notion in *Young*, where the defendant filed a motion to dismiss based on the Commonwealth's late production of approximately 225 hours of jail phone calls made by him, rendering him unprepared for trial. *Young*, 297 Va. at 446. In his motion, Young stated he felt as if he had to choose between his speedy trial rights and his right to effective assistance of counsel. *Id.* Young argued at the hearing on the motion that "[he] [was] certainly not in a position to go forward with [the] trial on August 1st," the previously agreed upon trial date. *Id.* at 447. After the circuit court denied the motion, Young proposed that trial commence on August 15th, but that "[he] [did not] want the [c]ourt to take that as the defense is now agreeing [with] this, . . . [that the] three week window would be attributable to Mr. Young[.]" *Id.* at 448 (third alteration in original). The court responded "[it] [was not] today ruling that this [was] the defendant's motion to remove this case from the docket. [It] [did not] know what that mean[t] down the road, but [it] [did] not count this as a defense motion." *Id.* Later, the circuit court referenced *Taylor v. Commonwealth*, 4 Va. App. 45 (1987),[7] to find that because the Commonwealth did not exhibit bad faith in producing this evidence, it would deny Young's motion to dismiss. *Id.* at 449.

The Supreme Court of Virginia reiterated that continuances initiated by the court are also subject to a speedy trial analysis, and are subject to the same requirements regarding objections as other continuances for purposes of calculating tolling periods.[8] *Id.* at 452. After clarifying that the

---

[7] In *Taylor*, the defendant's trial was to take place within the speedy trial window, but he requested two continuances that put him outside of it. 4 Va. App. at 51. He requested the first continuance because the Commonwealth discovered evidence that was lost or missing, and he requested the second continuance because he wanted to investigate information that the Commonwealth advised him of. *Id.* This Court found that "[a]bsent a showing of bad faith [regarding evidence] on the part of the Commonwealth, [it] [was] unwilling to impute the continuances to the Commonwealth." *Id.*

[8] The Supreme Court of Virginia relied on *Howard v. Commonwealth*, 281 Va. 455 (2011). In *Howard*, the circuit court entered a continuance order, sua sponte, which the defendant did not object to. *Id.* at 457-58. The Supreme Court considered whether "a court-initiated continuance within the tolling provisions of the speedy trial statute . . . is of a 'similar nature' to those contained in [Code § 19.2-243]." *Id.* at 460. It found that court-initiated

circuit court initiated the continuance, the Supreme Court held that Young did not object to the court's continuance. *Id.* at 453. It explained that although Young stated that he did not want the continuance attributed to him and that he was unprepared for trial, his suggestion of August 15th, a date outside of the speedy trial window, was "not the same as affirmatively objecting to a continuance" and noted that Young's counsel never used the word "object" during argument. *Id.* The Court found that this "failure to object . . . *[was] an acquiescence* in the fixing of [the] trial date beyond the five-month speedy trial period and [these circumstances] constitute[] a continuance of the trial date under Code § 19.2-243(4)." *Id.* (fourth and fifth alterations in original) (emphasis added) (quoting *Heath v. Commonwealth*, 261 Va. 389, 394 (2001)).

Here, on September 8th, during the hearing on the Commonwealth's continuance motion, the Commonwealth explained that DFS "ha[d] not even assigned a lab person to test [Wingate's DNA evidence] four months after it being submitted." The trial was scheduled to commence less than a week from this date, on September 12th. The Commonwealth further stated "[o]bviously, *[Wingate's] counsel objected* because his client was in custody," and that because the Commonwealth might violate Wingate's speedy trial rights,[9] it felt that "[it] [was] in a position where [it] needed to concede to a bond." (Emphasis added). Wingate's counsel stated "[w]e do not object to the continuance as long as my client is released" and "we don't object to the

_____

continuances were subject to speedy trial rights, and were therefore "subject to the same requirements regarding objections as other continuances." *Id.* at 461 (quoting *Stephens*, 225 Va. at 230). And because "in order to avoid the tolling provision, the defendant *must be adverse to the granting of the continuance* and *must affirmatively express his objection*[,]" "Howard's failure to object to the continuance initiated by the trial court . . . toll[ed] the five-month time period." *Id.* at 461-62 (emphasis added).

[9] "The Commonwealth's concern is [it] [did not] know if [it was] going to get the DNA testing or results back within a month[.]" "[It] just [did not] believe given that the lab ha[d] not even assigned someone to the test, [it] [did not] have faith that [it] [would] get the result back in enough time to give counsel notice . . . So [that was] [its] concern. So [it] [thought] [it] [was] going to be up at a speedy trial issue anyways."

- 11 -

Commonwealth's continuance provided that my client is allowed to be released." The court clarified with Wingate, "am I correct that if the [c]ourt is not granting bond[,] *you do oppose the continuance*?" (Emphasis added). Wingate responded, "[y]es, [y]our [h]onor." The court then granted the Commonwealth's motion and continued the trial to November 13th.

Even though Wingate initially indicated that he would not object to a continuance if he was released on bond, when the circuit court correctly separated the continuance request from the bond motion, Wingate "affirmatively express[ed] his objection." *Howard v. Commonwealth*, 281 Va. 455, 460 (2011). Wingate's conditioning his objection on whether the court would grant him bond—which it did not—does not equate to an "acquiescence" that his trial date take place outside of the speedy trial window. *Young*, 297 Va. at 453. Because Wingate was not released from custody at the September 8th hearing, any condition that might arguably have been placed on his objection was not met, and he was held "continuously in custody" pursuant to Code § 19.2-243.

A core principle of litigation is that parties make decisions using the best information available to them in the moment. Legal positions regarding scheduling are not static, and all parties must be permitted to adjust their stances when facing altered circumstances. Here, the Commonwealth fully availed itself of this principle when, after realizing it would not be able to present DNA evidence at the upcoming trial, it asked for a continuance. While it is true that Wingate previously agreed to a September 12th trial date, the Commonwealth's subsequent September 8th disclosure and motion to continue fundamentally changed the landscape of the case and sought to push the case out for an additional two months. With this new information, the defense was entitled to raise any objections and argue that the new circumstances supersede the old. To hold otherwise would be to allow the Commonwealth to adjust its case to new developments and renege on past agreements but hold the defense to its previous agreements. Wingate did not acquiesce to the continuance. He objected to the Commonwealth's motion on September 8th

because he was not immediately granted bond. When the Commonwealth moves to continue a trial based on a change in circumstances, as it did here, it should be prepared for the speedy trial calculation to be adjusted in response.

Accordingly, because Wingate objected to the continuance, and all continuances objected to by a defendant are chargeable to the Commonwealth, the court's grant of the Commonwealth's continuance motion on September 8th ended the tolling period that began on July 14th. *Heath*, 32 Va. App. at 186. The court instituted a valid order on September 8th,[10] continuing Wingate's trial to November 13th, and that action, affirmatively objected to by Wingate, superseded its previous continuance order made on July 14th for a September 12th trial.

Relatedly, the Commonwealth also argues that Wingate approbated and reprobated when his counsel, during the course of the trial, made various statements about the period between September 8th and September 12th. We find that argument unpersuasive. "Courts do not apply the approbate-reprobate doctrine at a 'granular level'; they look instead to 'confin[e] a litigant to a particular position.'" *AV Auto., L.L.C. v. Bavely*, 85 Va. App. 559, 578 (2025) (quoting *Commonwealth v. Holman*, 303 Va. 62, 74 (2024)). The approbate and reprobate doctrine bars successive and contradictory positions, not mere statements. "[A] party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory." *Rowe v. Commonwealth*, 277 Va. 495, 502 (2009) (quoting *Cangiano v. LSH Bldg. Co.*, 271 Va. 171, 181 (2006)). "Nor may a party invite error and then attempt to take advantage of the situation created by his own wrong." *Cangiano*, 271 Va. at 181.

---

[10] The court's September 8th order was memorialized in writing and filed by the court on September 18th.

The circuit court addressed the issue of speedy trial at multiple points before, during, and after Wingate's trial. Continuously through the course of litigation and this appeal Wingate has argued that his speedy trial rights were violated. At the September 15th bond hearing, Wingate's counsel stated, at first instance, "[the continuance] runs afoul of speedy trial, my client should be entitled to be released." In his November 9th pretrial motion to dismiss, Wingate reiterated that he objected to the continuance, specifically denoting the dates September 8th and September 15th in his speedy trial calculus. Before arraignment on November 13th, the first day of trial, Wingate was heard on his motion to dismiss, and through counsel stated, "I made it very clear on the record that we were objecting to the continuance." Post conviction, on November 22, 2024, in his motion to reconsider the motion to dismiss, Wingate argued that the September 8th date restarted the speedy trial clock, "it is the Commonwealth's burden to demonstrate that the delay, the 66 days between September 8th and November 13th . . . was excusable." This is consistent with his position on appeal, that "[a]n additional 66 days are attributable to the Commonwealth between September 8, 2023, when the Commonwealth was granted a continuance, and November 13, 2023, the commencement of trial."

Despite the numerous incidents in which speedy trial was addressed and September 8th was used as the operative date, the Commonwealth argues that contrary statements made by one of Wingate's attorneys forever binds him to a position that the period from September 8th to September 12th should be tolled.[11] During the argument on the morning of trial, Wingate's counsel stated, "I agree it should be July 17th to September 12th as attributable to count against my client." On the second day of trial when the subject of speedy trial was raised again, counsel stated, "our position the 8th to the 12th is still against us" and stated that "this entire prosecution

_____

[11] Wingate has had three separate attorneys between the trial, the motion to reconsider, and presently on appeal.

- 14 -

has taken place outside of speedy trial." Put simply, Wingate's counsel was consistent in his argument that the Commonwealth was in violation of his client's speedy trial before the trial commenced on November 13th, but seemingly used "against us" and "against them" interchangeably in his various arguments. More importantly, both at the trial and the motion to reconsider, the circuit court's ruling was *not* based on the days between September 8th through the 12th. At trial, the court denied the motion to dismiss and motion to strike because it found that an analyst not yet being assigned to DNA evidence was similar to the speedy trial exception for unavailability of analyst for trial. Additionally, the court found that, generally, the September 8th continuance was warranted to ensure a fair trial for both parties. The court denied Wingate's motion to reconsider without giving the parties its factual findings on the issues, including whether September 8th through the 12th counted against the Commonwealth. The Commonwealth urges us to cherry-pick apparent misstatements by defense counsel that support their view, rather than review Wingate's argument and the circuit court's ruling as a whole, which we decline to do.

In *Rowe*, the appellant argued that assault and battery of a law enforcement officer *was not* a lesser included offense of attempted capital murder of law enforcement officer. *Rowe*, 277 Va. at 501. The Supreme Court of Virginia found that "Rowe acquiesced without objection when the trial court accepted his theory" that the assault and battery charge was a lesser included offense of capital murder. *Id.* at 502-03. Furthermore, "Rowe [could not] now complain of *the trial court's adoption* of the legal theory he introduced and repeatedly urged the trial court to adopt." *Id.* at 503 (emphasis added).

Unlike the trial court in *Rowe*, it cannot be said that the circuit court in Wingate's case adopted his legal theory that September 8th through 12th counted against him. Both Wingate and the Commonwealth's multiple arguments on this issue were left completely unaddressed by

the circuit court. As stated at trial, the circuit court's basis for its denial of Wingate's motion to dismiss was because the DFS issue in this case was similar to an enumerated exception for speedy trial, the DFS issue was out of the parties' control, the Commonwealth's request for the DFS evidence was "timely," the evidence could be "inculpatory or exculpatory," and ultimately the continuance was to "ensure a fair trial to both the accused and the Commonwealth." Because the circuit court neglected to make factual findings on both Wingate's and the Commonwealth's arguments regarding whether the period between September 8th through 12th was tolled, we do not find that Wingate is now "tak[ing] advantage of the situation created by his own wrong" on appeal. *Cangiano*, 271 Va. at 181.

In conclusion, the dates from September 8th, when the circuit court granted the Commonwealth's continuance over Wingate's objection, through November 13th, the first day of trial, are chargeable to the Commonwealth. The addition of those 66 days to the 92 days previously attributable to the Commonwealth total 158 days, putting it over the "152 and a fraction days." *Osman*, 76 Va. App. at 657.

V.  The Failure of DFS to Assign an Analyst Is Not a Recognized Tolling Provision Under Code §19.2-243

The next issue we address is whether the Commonwealth's September 8th continuance—requested because the DFS had not yet assigned an analyst to the DNA evidence in Wingate's case—is an "implied exception" under the Code. We find that it is not.

It is this Court's duty to review "issues of statutory construction and application [as] questions of law," and they will be "reviewed de novo on appeal." *Osman*, 76 Va. App. at 642 (quoting *Lopez v. Commonwealth*, 73 Va. App. 70, 77 (2021)).

The Commonwealth bears the burden of demonstrating that a delay in speedy trial was excused under Code § 19.2-243. *Turner v. Commonwealth*, 68 Va. App. 72, 79 (2017) (quoting *Heath*, 32 Va. App. at 181). "Proper assessment and determination of the merits of a statutory

- 16 -

speedy trial claim 'involve a review of the whole record and a consideration of the trial court orders in the context of the record that comes before' the court." *Wallace*, 65 Va. App. at 88 (quoting *Brown v. Commonwealth*, 57 Va. App. 381, 389-90 (2010)).

The Code lists seven exceptions to which the speedy trial provisions do not apply. Code § 19.2-243. The exceptions are "not meant to be all-inclusive, and other exceptions of a similar nature are *implied*." *Wallace*, 65 Va. App. at 93 (emphasis added) (quoting *Hudson v. Commonwealth*, 267 Va. 36, 41 (2004)). Therefore, "exceptions to the time requirement are permissible *as long as they are of a similar nature* and *have the same rationale as the enumerated exceptions*." *Id.* at 93-4 (emphases added).

Here, the Commonwealth argues that an analyst not being assigned to test the DNA evidence is a pari ratione to the exception listed under Code § 19.2-243(5) because "delays related to DNA testing" were contemplated by the General Assembly under Code § 19.2-243(5). Code § 19.2-243(5) states that time will not be chargeable against the Commonwealth if a "continuance [is ordered] pursuant to subsection I or J of [Code] § 18.2-472.1 or subsection C or D of [Code] § 19.2-187.1." Under Title 18.2, speedy trial is tolled "[w]here a custodian of the records is not *available* for hearing or trial." Code § 18.2-472.1(I) (emphasis added). Under Title 19.2, speedy trial is tolled "[w]here the person who performed the analysis and examination is not available for hearing or trial." Code § 19.2-187.1(C). The operative theme in each of these statutory exceptions is *availability for trial*.

In Wingate's case, the Commonwealth sent out evidence for DNA testing to DFS on April 14th. At the Commonwealth's September 8th continuance hearing, it stated: "[it] had [its] crime scene detective reach out to [DFS]. He respond[ed] to [it] that they ha[d] not even assigned a lab person to test it four months after it being submitted."

The circuit court found for the Commonwealth for the following reasons: (1) the delay in DNA testing was beyond the control of the court and the parties, (2) the Commonwealth requested testing in a timely manner, (3) the continuance was meant to ensure a fair trial, and (4) the DNA results could include both inculpatory and exculpatory evidence. For those reasons, it tolled the dates from September 8th to November 13th, the first day of trial.

While it may be true that the individual prosecutor in this case did not learn that months had elapsed without DFS assigning an analyst for the submitted material, the prosecutor certainly had the authority to decide what evidence to present at trial. Understanding that delays at the lab are common, the Commonwealth could have simply chosen to proceed with the prosecution without the presentation of DNA evidence, or otherwise explored options other than DFS to perform the analysis.[12] And if Wingate desired to wait for the results of the DNA testing before his trial commenced, he could have agreed to the Commonwealth's request for a continuance. But he did not.

The Commonwealth finally received the test results on October 13, 2023, 182 days after it first sent the evidence for testing. Following the Commonwealth's argument and the circuit court's reasoning to its natural conclusion, if all delays related to DNA testing operated as a tolling provision, a criminal defendant's right to a speedy trial would be entirely subject to DFS internal assignment policies, and there would be no limit to the time that a person would remain in custody awaiting trial so long as it was related to DNA analysis.

---

[12] The record is clear that the Commonwealth considered the option of proceeding without DNA results. At the September 8th hearing, the Commonwealth stated that "[w]hile [it] [did not] have any doubts about the strength of [its] case, [it] would always hate to be the prosecutor that prosecuted someone when DNA comes back and clears him." Later in the same hearing, the Commonwealth stated that "if the Commonwealth receives testing back and . . . it exclude[ed] the Defendant, the Commonwealth [was] going forward, because [it] [had] an eyewitness, [it] [had] a complaining witness who has identified the Defendant."

The "spirit and purpose of the law" is to "provide for speedy trial exceptions . . . '*beyond the control* of the trial judge and *the parties*' . . . to '*ensure a fair trial* to both the accused and the Commonwealth.'" *McCalla*, 87 Va. App. at 576 (emphases added). Making note of the Commonwealth's suggestion that Wingate be granted bond, ultimately, it was the Commonwealth's strategic choice to use DNA evidence for Wingate's trial even while understanding the delays. It was error of the circuit court to find that the failure to assign a DNA analyst was a permissible exception tantamount to the unavailability of an analyst to attend the trial, and thus this constituted an additional violation of Wingate's speedy trial rights.

CONCLUSION

An accused's statutory right to a speedy trial under Code § 19.2-243 is not a mere technical loophole. It is a principle, derived from the Sixth Amendment, designed to ensure a fair trial. While enforcing these strict procedural boundaries may occasionally result in a guilty individual escaping punishment, this cost is indispensable to prevent government overreach. Because Wingate was held in continuous custody over his objection, the statutory clock continued to run against the Commonwealth. The time limitations prescribed by the statute admit only a few narrow exceptions, none of which exist here. Accordingly, this Court finds that the Commonwealth violated Wingate's statutory right to a speedy trial, and we reverse the circuit court's decision to deny his motion to dismiss for failure to comply with speedy trial requirements.

*Reversed and final judgment.*